**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANDREA RUSSO,
    *Plaintiff,*

    v.

COSTCO WHOLESALE CORPORATION          7:22-cv-03130-VR
    *Defendant.*                       Monday, March 16, 2026

---

**COSTCO WHOLESEALE CORPORATION'S**
**OMNIBUS MOTION IN LIMINE TO PRECLUDE :**
**(1) TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES, OR ECONOMIC STATUS OF COSTCO;**
**(2) EVIDENCE RELATED TO SIMILAR OR SAME OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST COSTCO;**
**(3) PREJUDICIAL, INFLAMMATORY, AND DISPARAGING ARGUMENTS;**
**(4) PLAINTIFF FROM RAISING GOLDEN RULE ARGUMENTS AT THE TIME OF TRIAL;**
**(5) PLAINTIFF FROM RAISING REPTILE THEORY ARGUMENTS AT THE TIME OF TRIAL;**
**(6) THE USE OF COMMITMENT QUESTIONS TO PROSPECTIVE JURORS**
**(7) UNSUBSTANTIATED ANCHORING**

---

DEFENDANT,
Costco Wholesale Corporation
Coughlin Betke LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com
Monday, March 16, 2026

# TABLE OF CONTENTS

## Contents

Monday, March 16, 2026 ................................................................................................ 1

INTRODUCTION ........................................................................................................... 1

MOTION TO PRECLUDE TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES,
OR ECONOMIC STATUS OF COSTCO .................................................................... 1

    CONCLUSION ........................................................................................................... 3

MOTION TO PRECLUDE EVIDENCE RELATED TO SIMILAR OR SAME
OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST COSTCO ......................................... 4

    CONCLUSION ........................................................................................................... 5

MOTION TO PRECLUDE PREJUDICIAL, INFLAMMATORY, AND DISPARAGING
ARGUMENTS ................................................................................................................ 6

    I. Plaintiff May Not Criticize or Disparage Costco or Its Counsel for Exercising Its Right to
Defend Itself in This Case .......................................................................................... 6

    II. Plaintiff May Not Attack or Disparage Costco's Counsel at Trial ..................................... 7

    III. Plaintiff May Not Appeal to Local Bias .................................................................... 8

    CONCLUSION ........................................................................................................... 8

MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM RAISING GOLDEN RULE
ARGUMENTS AT THE TIME OF TRIAL ..................................................................... 9

    I. The Golden Rule Is Not In Accordance WIth New York Law ........................................ 9

    II. The Golden Rule Improperly Asks Jurors to Base Their Decision on Sympathy Rather Than
Evidence ................................................................................................................ 10

    III. Golden Rule Arguments Are Prejudicial .................................................................. 10

    CONCLUSION ......................................................................................................... 10

MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM RAISING REPTILE THEORY
ARGUMENTS AT THE TIME OF TRIAL ................................................................... 11

    I. Reptile Theory Misstates New York Law .................................................................. 13

    II. Reptile Theory Improperly Asks Jurors to Base Their Decision Considerations Other Than
the Evidence ........................................................................................................... 14

    III. Reptile Theory Arguments Are Prejudicial .............................................................. 15

    CONCLUSION ......................................................................................................... 15

MOTION IN LIMINE TO PRECLUDE THE USE OF COMMITMENT QUESTIONS TO
PROSPECTIVE JURORS ............................................................................................. 16

    I. Commitment Questions are not proper ....................................................................... 16

    CONCLUSION ......................................................................................................... 17

MOTION IN LIMINE TO PRECLUDE UNSUBSTANTIATED ANCHORING .................... 18

i

I. Unsubstantiated Anchoring Is an Improper, Yet Effective, Method of Suggesting to the Jury an Inflated and Irrational General Damages Award ................................................................. 18

    A.   Tactic 1: Anchoring Via Reference to Irrelevant High-Cost Items ............................. 19

    B.   Tactic 2: Anchoring Through Reference to Defendant's Wealth or Litigation Expenses 20

    C.   Tactic 3: Anchoring Via the Improper Use of Mathematical Formulas Unsupported by Evidence .................................................................................................................. 20

II. Unsubstantiated Anchoring is Improper Because Seeks Inflated Damages Based on Irrelevant Facts Not In Evidence and Inadmissible Hearsay .................................................... 21

III. Unsubstantiated Anchoring is Improper Because It Seeks an Award Based on Punishment Rather than Compensation .................................................................................................. 24

IV. Unsubstantiated Anchoring Is Improper Because It Risks Violating the Rules of Professional Conduct .......................................................................................................... 24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

804......................................................................................................................................... 23

*Bermudez v. City of New York*, 2019 US Dist. LEXIS 3442, at *29 (E.D.N.Y. Jan. 8, 2019) ..... 22

*Boshnakov v. Bd. of Educ. of Town of Eden*, 277 A.D.2d 996, 996 (4th Dep't 2000) ................... 9

*Caley v. Manicke,* 24 Ill. 2d 390 (1962) ........................................................................................ 21

*Callaghan v. A Lague Express*, 298 F.2d 349, 350-51 (2d Cir. 1962) ........................................... 9

*Christopher v. DePuy Orthopaedics, Inc.* 888 F.3d 753 (5th Cir. 2018)...................................... 20

*Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vac'd on other grounds
    sub nom. Consorti v. Owens-Corning Fiberglass Corp*, 518 U.S. 1031 (1996)...................... 23

*Coopersmith v. Gold*, 89 N.Y.2d 957, 959 (1997).......................................................................... 4

*Dwyer v. Deutsche Lufthansa*, 686 F. Supp. 2d 216, 221 (E.D.N.Y. 2010) ................................. 18

*Fasani v. Kowalksi,* 43 So.3d 805 (Fla. 3d DCA) ........................................................................ 19

*Front, Inc. v. Khalil,* 24 N.Y.3d 713, 718 (2015) ........................................................................... 6

*Gaines Towing & Transp. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir. 1999) ............ 24

*Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 126-39 (1996).......................................... 21

*Gen. Motors Corp. v. Burry,* 203 S.W.3d 514, 551 (Tex. App.—Fort Worth 2006, pet. denied)
    (op. on reh'g) .......................................................................................................................... 18

*Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)............................................................... 12

*Gonzalez v. United States*, 80 F.4th 183, 187 (2d Cir. 2023) ....................................................... 22

*Gottwald v. Sebert,* 40 N.Y.3d 240 (2023) ..................................................................................... 6

*Greene v. Scott,* 637 F. App'x 749, 751 (4th Cir. 2016)............................................................... 23

*Gregory v. Chohan,* 670 S.W.3d 546, 557 (Tex. 2023)................................................. 18, 19, 20, 24

*Halftown v. Triple D Leasing Corp.*, 89 A.D.2d 794, 794 (4th Dep't 1982)............................... 12

*Harwood v. North Am. Bancard, LLC,* No. 18-cv-12567, 2022 U.S. Dist. LEXIS 118595, at *11
    (E.D. Mich. July 6, 2022) ....................................................................................................... 23

*Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) ............................................................................... 23

*Hovsepyan v. GEICO Gen. Ins. Co.,* 616 F. Supp. 3d 1057, 1066 (E.D. Cal. 2022).................... 18

*Illinois v. Allen*, 397 U.S. 337, 343 (1970) .................................................................................... 1

*Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) .......................................... 2

*Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970).................................................................... 2

*Liosi v. Vaccaro*, 35 A.D.2d 790 (1st Dep't 1970) ......................................................................... 9

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) ........................... 9, 13

*Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 463 (S.D.N.Y. Nov. 14, 2003)
    (Conner, J.)............................................................................................................................... 9

*Marcoux v. Farm Service and Supplies, Inc.,* 290 F. Supp. 2d 457, 478 (S.D.N.Y. 2003) .......... 18

*Marshall v. Port Auth. of New York.*, No. 19-cv-2168 (LJL), 2022 U.S. Dist. LEXIS 219372, at
    *17 (S.D.N.Y. Dec. 5, 2022).................................................................................................. 21

*Matter of Brandon's Estate*, 55 N.Y.2d 206, 210-11 (1982)........................................................ 4

*Mazella v. Beals*, 27 N.Y.3d 694, 709 (2016)................................................................................ 4

*Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ................................... 22, 25

*Morgan v. Robinson*, 3 A.D.2d 216 (1st Dep't 1957)..................................................................... 4

*Mueller v. Hawaii,* 595 F. Supp. 3d 920, 930 (D. Hawai'I 2022) ............................................... 22

*Nicolosi v. BRG Sports, Inc.*, 2019 U.S. Dist. LEXIS 143215, at *17-18 (E.D.N.Y. Aug. 21,
    2019) (Pollak, J.)..................................................................................................................... 14

*Norton v. Nguyen*, 49 A.D.3d 927, 930 (3d Dep't 2008)...................................................................... 11
*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992) ...................................... 8
*Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) ........................................................................ 22
*People v. Douglas*, 178 Misc. 2d 918, 929 (Sup. Ct. Bronx Cnty. 1998)....................................... 12
*Public Health Trust v. Geter*, 613 So. 2d 126, 127 (Fla. 3d DCA 1993) ................................. 19, 20
*Reynolds v. American Airlines,* 2017 U.S. Dist. LEXIS 192822, *30-31 (E.D.N.Y. 2017)......... 22
*Roberts v. Equifax, Inc*., 2024 LX 268485, at *2 n.2 (Queens Sup. Ct. Feb. 20, 2024)
    (Annaculley, J.)............................................................................................................................ 8
*Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 222-24 (S.D.N.Y. 2021)........................ 4
Rule 801(c) of the Federal Rules of Evidence .................................................................................. 23
Rules 802 .......................................................................................................................................... 23
*State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416  (2003).................................... 24
*Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004)................................................................. 2
*United States v Spock*, 416 F2d 165, 182 (1st Cir 1969) ................................................................ 12
*United States v. Basciano*, 2011 U.S. Dist. LEXIS 11077, at *6 (E.D.N.Y. Feb. 4, 2011).......... 17
*United States v. Dervishaj*, 2015 U.S. Dist. LEXIS 78622, at *5 (E.D.N.Y. June 14, 2015) ...... 17
*United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002)............................................................... 4
*United States v. Fell,* 372 F. Supp. 2d 766, 770 (D. Vt. 2005) ...................................................... 17
*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978)................................................................... 4
*United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980)............................................................... 2
*United States v. Wilson,* 493 F. Supp. 2d 402, 405 (E.D.N.Y. Aug. 23, 2006) (Garaufis, J.) ...... 16
*Varveris v. Hermitage Ins. Co*., 806 N.Y.S.2d 688, 689 (2nd Dept. 2005)................................... 14
*Weintraub v. Zabotinsky*, 19 A.D.2d 906 (2d Dep't 1963)................................................................ 9

**Other Authorities**
Behrens et al, *Summation Anchoring: Is it Time to Cast Away Inflated Requests for Noneconomic*
    *Damages?,* Amer.J. of Trial Advocacy, Vol 44: 321 at 322 ............................................. 19, 25
New York's Pattern Jury Instructions 1:7A and B ........................................................................ 12
Pattern Jury Instruction 2:10 ........................................................................................................ 13
*Reptile: The 2009 Manual of the Plaintiffs Revolution* ................................................................ 11

**Rules**
CPLR 4016(b)................................................................................................................................. 21
CPLR 5501(c) ........................................................................................................................... 21, 22
F.R.E. 401 ................................................................................................................................... 22, 23
F.R.E. 402 ........................................................................................................................................ 1, 3
F.R.E. 403 .................................................................................................................................. passim
Federal Rule of Evidence 404(b)(1) ................................................................................................. 4
Model Rules of Professional Conduct, Rule 1.3 Diligence – Comment ...................................... 1
N.Y. RPC 1.3 ..................................................................................................................................... 1
Rule 3.3(a)(1)................................................................................................................................... 25
Rule 3.4(d) of the Rules of Professional Conduct .................................................................... 24, 25
Rule 3.7 ............................................................................................................................................ 25

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANDREA RUSSO,
  *Plaintiff,*
  v.
COSTCO WHOLESALE CORPORATION          1:21-cv-05097-ER
  *Defendant.*                        Tuesday, March 10, 2026

### INTRODUCTION

It is "essential" to the proper administration of justice that "dignity, order, and decorum be the hallmarks of all court proceedings in our country." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). The American Bar Association has commented that acting with diligence "does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect." *See* Model Rules of Professional Conduct, Rule 1.3 Diligence – Comment; N.Y. RPC 1.3 ("the lawyer should not use offensive tactics or fail to treat all persons involved in the legal process with courtesy and respect."). In accordance with these principles, Costco asks that the Court enter an order prohibiting Plaintiff, Plaintiff's counsel, or any other individual from making disparaging and unsupported arguments attacking Costco or its attorneys at trial, as set forth below:

### MOTION TO PRECLUDE TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES, OR ECONOMIC STATUS OF COSTCO

F.R.E. 402 and F.R.E. 403 require that evidence have the tendency to prove or disprove a fact of consequence to the determination of the action, and that such evidence be excluded if its probative value is substantially outweighed by the risk of undue prejudice, confusion of issues, or misleading the jury. Thus, evidence of a defendant's wealth is admissible only if it relates to a substantive issue at trial. Referring to the wealth or poverty of a party, or contrasting the financial

status of one with the other in the course of argument (except where relevant to the issues), is an improper appeal to the sympathy or prejudice of the jurors, requiring a new trial. *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970) ("Remarks such as these, which can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor, are grounds for a new trial."); *see Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices."); *see also United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) ("Because such appeals [to class prejudice] are improper and have no place in a court room . . . we are compelled to reverse.") (internal citations omitted).

It is a fundamental rule that a party's wealth or insurance are grossly improper areas to explicitly or implicitly mention to a jury. *See Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004) ("Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages.") (internal quotation marks omitted) (alteration in original). Remarks pertaining to defendants' status as corporate entities, their profits, revenue, the number of employees or their insurance represent similar improper arguments and should be precluded. The same goes for unfounded accusations that defendants placed "profits over safety" or "cut corners to save a buck." Absent actual record evidence of such corner-cutting (and here, there is none) <u>combined with</u> a further demonstration of its relevance to a determination of purely compensatory damages for personal injuries, such remarks are forbidden.

Here, Costco seeks an order precluding Plaintiff from offering testimony or argument regarding Costco's financial condition, including compensation paid to Costco's executives of employees. Costco anticipates that Plaintiff may employ argument or terminology at trial that would present a "David versus Goliath scenario" in order to prejudice a jury against Costco,

encourage the jury to award damages based on Costco's wealth as opposed to the evidence. As the above cases demonstrate, these tactics are impermissible as they violate a party's right to a fair trial. Similarly, any testimony regarding employee or executive compensation is not only irrelevant but also would be highly prejudicial, as it would ask the jurors to assess this case based on facts having nothing to do with whether plaintiff was injured on Costco's premises, and if so, whether Costco is liable, but instead would ask the jury to base its verdict on irrelevant factors.

Evidence of Costco's size and financial status is not only improper, but it would also violate plain language of the Rules of Evidence.  F.R.E. 402 and 403 require that evidence have the tendency to prove or disprove a fact of consequence to the determination of the action, and that such evidence be excluded if its probative value is substantially outweighed by the risk of undue prejudice, confusion of issues, or misleading the jury. Here, evidence of Costco's size or financial status has no tendency to make a fact more or less probable, it is of no consequence to this action, and it is prejudicial, misleading and a waste of the jurors' time.

## CONCLUSION

For the foregoing reasons, Costco respectfully requests that this Honorable Court issue an Order *in limine* (1) excluding all evidence of Costco's financial condition or profits, (2) directing that all counsel be instructed not to comment on such evidence or make any attempt to introduce testimony or evidence regarding the same, and (3) directing all counsel inform their witnesses not to make any references or comment to such evidence.

## MOTION TO PRECLUDE EVIDENCE RELATED TO SIMILAR OR SAME OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST COSTCO

Costco respectfully submits this motion *in limine* for an order prohibiting all reference to, interrogation on, comment on, and introduction into evidence of any and all testimony regarding any evidence of other alleged related occurrences, claims or lawsuits against Costco. There is no evidence of other similar incidents at this location, as the law would require, so such evidence is accordingly not relevant or admissible as per Federal Rule of Evidence 404(b)(1) and established precedent[1]; (2) admission of such evidence has been deemed reversible error[2]; (3) such evidence has little, if any, probative value which is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice, confuse the issues for the jury, necessitate undue consumption of time, and mislead the jury; and (4) the court has the inherent power to curb abuses and promote fair process. This motion applies to all portions of the trial, including jury selection, opening statements, the testimony and examination of witnesses, and closing arguments.

Evidence of other pending claims, verdicts, and/or settlements reached in other litigations against Costco are inadmissible and wholly irrelevant to this matter. Admission of other claims and lawsuits against Costco would complicate and prolong these proceedings by overwhelming the jury with collateral evidence requiring a series of mini-trials related to the circumstances of each other occurrence. The introduction of such evidence is irrelevant and prejudicial and would deny Costco its right to a fair trial.

---

[1] *See Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 222-24 (S.D.N.Y. 2021); *Mazella v. Beals*, 27 N.Y.3d 694, 709 (2016); *Coopersmith v. Gold*, 89 N.Y.2d 957, 959 (1997); *Matter of Brandon's Estate*, 55 N.Y.2d 206, 210-11 (1982); *see also United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) ("Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial.").

[2] *See, e.g.*, *United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978); *Morgan v. Robinson*, 3 A.D.2d 216 (1st Dep't 1957).

**CONCLUSION**

For the foregoing reasons and pursuant to the above-referenced authorities, Costco respectfully requests an order *in limine* excluding evidence of other claims or lawsuits against Costco.

## MOTION TO PRECLUDE PREJUDICIAL, INFLAMMATORY, AND DISPARAGING ARGUMENTS

Defendant Costco Wholesale Corporation ("Costco") moves in limine that this Court enter an order prohibiting Plaintiff, Plaintiff's counsel, or any other individual from introducing prejudicial, inflammatory, and disparaging arguments or evidence that attacks Costco or its attorneys at trial. This includes disparagement or criticism of Costco or its counsel for litigating this matter, and appeals to local bias. It is hoped that a motion in limine in this regard will not need argument, since this is already prohibited under the Rules of Evidence and longstanding case law. However, the fact of the matter is that it is a recognized aspect of many plaintiff's attorney's playbook is to provoke a jury's anger toward defendants by disparaging them. If counsel does not intend to use these tactics, allowance of this motion is superfluous. However, if Plaintiff does, allowance of this motion will prevent Plaintiff from invoking Costco's status as a large company and encourage a verdict that is not based on the evidence, but rather, on a desire to punish a large out-of-state corporation. Such a tactic has no place in a court of justice and must be prohibited.

### I. Plaintiff May Not Criticize or Disparage Costco or Its Counsel for Exercising Its Right to Defend Itself in This Case

There can be no dispute that a defendant such as Costco has the right to defend a case through trial. Costco's right to defend itself in litigation is established by the litigation privilege set forth in *Gottwald v. Sebert,* 40 N.Y.3d 240 (2023), which provides for absolute privilege the applies to any communication made by "attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved." Indeed, to hold otherwise "would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires." *Front, Inc. v. Khalil,* 24 N.Y.3d 713, 718 (2015).

The litigation privilege means that Costco is not required to agree that Plaintiff was injured

or that it is liable for Plaintiff's injuries, nor is it required to pay damages requested by the Plaintiff simply because it is a large company that may have, or is perceived to have, the financial means to do so. Like any other defendant in a civil case, Costco has the right to defend itself when it is sued. This means that Costco, like any other defendant in a personal injury case, has the right to, among other things: file motions, including those seeking dismissal; refuse a settlement demand; depose a plaintiff; hire experts; pay its attorneys; obtain medical records; take a case to trial; and challenge the plaintiff's claims at trial. These are all actions that are a part of the litigation process and cannot, as a matter of law, give rise to a cause of action for damages. Unfortunately, however, it has become a trial tactic to argue to jurors – who may not be familiar with personal injury litigation – that a defendant should be punished for taking the ordinary steps in defending a lawsuit.

In light of the well-established litigation privilege, Plaintiff must be prohibited from criticizing or disparaging Costco or its counsel for litigating this case, including, without limitation: raising affirmative defenses, investigating the Plaintiff's claims, conducting discovery, retaining experts, filing motions, objecting to evidence, or challenging the validity of the Plaintiff's claims at trial. Plaintiff does not, as a matter of law, have a right of recourse against Costco or its counsel for defending this case. Thus, it would be wholly inappropriate for Plaintiff's counsel to argue to the jury that Costco should be penalized for defending itself vigorously.  For example, Plaintiff should be prohibited for making arguments that Costco violated Plaintiff's privacy by reviewing their medical records or caused Plaintiff further harm by "*requiring* her to go to Court." To hold otherwise would be to violate the litigation privilege by improperly inviting jurors to award Plaintiff damages because Costco defended this lawsuit.

### II. Plaintiff May Not Attack or Disparage Costco's Counsel at Trial

Similarly, attacks on opposing counsel for vigorously defending their client are not permitted. Attorneys are required under the Rules of Professional Conduct to "act in a professional

and courteous manner; to avoid vulgar language, disparaging personal remarks or acrimony toward other counsel, parties or witnesses whether orally or in writing." *Roberts v. Equifax, Inc*., 2024 LX 268485, at \*2 n.2 (Queens Sup. Ct. Feb. 20, 2024) (Annaculley, J.). Further, this type of argument can be incurable. "When the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992). The motion in limine should accordingly be granted.

### III. Plaintiff May Not Appeal to Local Bias

Counsel may not use Costco's status as an out-of-state corporation in attempt to emotionally influence the jury. *See Pappas, supra* at 541 ("No verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice."). In *Pappas, supra,* the Court granted a new trial after counsel improperly inserted regional bias into his closing arguments, encouraging the jury to engage in "us-against-them", including a statement that plaintiff's skiing party can "come up here from New Jersey to Vermont to enjoy what we experience every year." Here, Costco asks that the Court issue an order prohibiting Plaintiff from characterizing Plaintiff as "local" who is up against an "outsider," either through use of "us-against-them" language, by stressing Costco's status as a Washington-based corporation, or by emphasizing Costco's national or international presence. Any such argument or language is impermissibly prejudicial and must be excluded from trial.

### CONCLUSION

For the reasons set forth above, Defendant's Motion must be granted.  Plaintiff must be barred from introducing prejudicial, inflammatory, and disparaging arguments or evidence that attacks Costco or its attorneys at trial.at the time of trial.

**MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM RAISING GOLDEN RULE ARGUMENTS AT THE TIME OF TRIAL**

"The well established 'Golden Rule,' also known as the 'bag of gold' rule, prohibits counsel from telling the jurors, either directly or by implication, that they should put themselves in plaintiff's place and render such a verdict as they would wish to receive were they in plaintiff's position." *Marcoux v. Farm Serv. & Supplies, Inc*., 290 F. Supp. 2d 457, 463 (S.D.N.Y. Nov. 14, 2003) (Conner, J.). (citations, alterations omitted). "Golden Rule arguments are prohibited because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (citations, alterations omitted); *see also Callaghan v. A Lague Express*, 298 F.2d 349, 350-51 (2d Cir. 1962) (court improperly allowed counsel to argue that the jury "should treat [plaintiff] as you would like to be treated"); *Boshnakov v. Bd. of Educ. of Town of Eden*, 277 A.D.2d 996, 996 (4th Dep't 2000); *Liosi v. Vaccaro*, 35 A.D.2d 790 (1st Dep't 1970); *Weintraub v. Zabotinsky*, 19 A.D.2d 906 (2d Dep't 1963).

## I. The Golden Rule Is Not In Accordance WIth New York Law

In this case, Plaintiff assert a negligence claim against the Defendant.  To maintain a *prima facie* case of negligence, Plaintiff must prove, by competent evidence, four elements:"(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc*., 280 F.3d 209, 215 (2d Cir. 2002) In contrast to New York law, golden rule arguments effectively ask a jury to not be impartial and decide the case on the evidence, but instead decide the case on the basis of personal interest and bias. It asks a jury to depart from determining what a reasonably prudent person would foresee under the circumstances and to put themselves in the shoes of the Plaintiff.  As that is an improper statement of New York law, Plaintiff should not be allowed to make golden rule arguments at trial.

**II. The Golden Rule Improperly Asks Jurors to Base Their Decision on Sympathy Rather Than Evidence**

Similarly, Plaintiff must be barred from making any golden rule arguments because it asks the jury to put themselves in the shoes of the Plaintiff and set damages at the value that they would wish to receive were they in Plaintiff's position. As noted, golden rule arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Plaintiff should not be allowed to ask jurors to consider how they would feel if they were in the shoes of Plaintiff, as such an argument improperly encourages the jury to base its decision on factors other than the evidence.

**III. Golden Rule Arguments Are Prejudicial**

Even if the golden rule was relevant (which Defendant maintains it is not), reference to the rule should be precluded under F.R.E. 403, which provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Golden rule arguments do precisely that because they ask jurors how they would feel if placed in Plaintiff's position. Allowing a golden rule argument at the time of trial would be unduly prejudicial to Defendants because it would improperly permit the jury to be influenced by emotion, self-interest, and sympathy, rather than deciding the case on the evidence.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion must be granted. Plaintiff must be barred from making golden rule arguments at the time of trial.

**MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM RAISING REPTILE THEORY ARGUMENTS AT THE TIME OF TRIAL**

The Reptile Theory improperly involves evoking the jurors' fears of danger to the community as a result of a defendant's conduct and improperly asks that the jury be the "conscience of the community" and to "send a message" with its verdict, which is improper under New York law. *Norton v. Nguyen*, 49 A.D.3d 927, 930 (3d Dep't 2008) ("[I]t is inappropriate to refer to the jury as the 'conscience of the community'"). Specifically, the Reptile Theory was established in the 2009 book by David Ball and Don C. Keenan entitled, *Reptile: The 2009 Manual of the Plaintiffs Revolution*. The theory behind this argument is that people are driven by the "reptilian" portion of the brain that houses basic life functions, such as breathing, balance, hunger, survival. The authors of the <u>Reptile</u> manual explain that the trial goal of a plaintiff's attorney should be to get a juror's brain into "reptilian" survival mode. The survival instinct extends beyond an individual's survival and has the larger purpose of allowing for the survival of the human species. The Reptile Theory thus evokes the jurors' fears of danger to the community as a result of a defendant's conduct. This is accomplished by using words such as "rules," "threat," "community standards," and "community protection." After evoking those fears, the next step is to request that the jury use its power to improve community safety by "sending a message," which, of course, is done by entering a verdict favorable to the plaintiff.

Reptile evidence and arguments: 1) mislead and/or confuse jurors as to their role simply to compensate the plaintiff for his or her injury, rather than to "send a message" to the defendant or protect their community; 2) misstate the applicable law and improperly raise the "reasonable person" negligence standard to a Safety Rule espoused by Plaintiff that is unsupported by statute, case law and/or expert testimony; and; 3) are irrelevant because they are designed to compel jurors to decide a case based on emotions and fear rather than facts and law. A defendant is not required

to choose the course of action that in hindsight would have constituted the "safest product" or "best care" to a particular plaintiff. References to hypothetical harm to the community are irrelevant to a plaintiff's injuries.

Reptile Theory is the equivalent of "send a message" or "conscience of the community" arguments, which New York Courts have barred. *See Halftown v. Triple D Leasing Corp.*, 89 A.D.2d 794, 794 (4th Dep't 1982) (ordering, *inter alia*, a new trial on damages, where "Counsel [] told the jury six times that they were "the conscience of the community" and must send a message to those in the construction field to be more careful so that this does not happen again, thereby inviting the jury to award punitive damages although such were not involved in the pleadings); *see also Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (admonishing prosecutor for making an inappropriate "reference to the community's cry for safer streets" in closing argument); *People v. Douglas*, 178 Misc. 2d 918, 929 (Sup. Ct. Bronx Cnty. 1998) (the principle is also applicable in criminal jury trials [before sentencing], as "[j]uries cannot be 'the conscience of the community' [*United States v Spock*, 416 F2d 165, 182 (1st Cir 1969)] by violating their oath to apply the law to the evidence").

The attempt to urge or even suggest that a jury render a verdict on the basis of fear or safety of the community contradicts New York's Pattern Jury Instructions that require that jurors decide a case fairly and impartially without sympathy, passion, bias, or prejudice. New York's Pattern Jury Instructions 1:7A and B provide:

> A lawsuit is a civilized method of determining disputes. It is basic to the administration of any system of justice that the decisions on both the law and the facts be made fairly and honestly. You as the jurors and I as the court have a heavy responsibility-to act impartially and ensure a just result is reached in deciding the dispute between the plaintiff and the defendant in this case.

> As a fair and impartial juror you must guard against the application of any stereotypes or attitudes about people or groups that might lead you to render a decision based on those stereotypes or attitudes. Keep in mind that bias is not always obvious or conscious. In assessing the testimony and other evidence in the case, you must not be swayed by those stereotypes or attitudes.

Reptile Theory arguments also disregard the reasonable person standard for an overly simplified "safety rule" that implies that defendants must be near perfect and not create any risks. Pattern Jury Instruction 2:10 instructs the jury on negligence:

> Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

## I. Reptile Theory Misstates New York Law

In this case, Plaintiff asserts a negligence claim against Defendant. To maintain a *prima facie* case of negligence, Plaintiff must prove, by competent evidence, four elements:"(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).

In contrast to New York law, Reptile Theory arguments redefine and heighten the standard of care in a negligence action by effectively turning it into a strict liability standard by demanding a "safest possible choice" to protect the community at large. There is no variance allowed for what reasonably careful people would do in similar circumstances, as required in a negligence case. Instead, Reptile Theory in effect creates strict liability whenever a defendant does not make what a plaintiff contends, with the benefit of hindsight, would have been the "safest possible choice," without regard for other acceptable choices. Since that is an improper statement of New York law, Plaintiff must not be permitted to make Reptile Theory arguments at the time of trial.

Further, Reptile Theory improperly suggests that a jury award punitive damages. "Punitive damages are only available in limited circumstances where it is necessary to deter conduct which may be characterized as a fraud evincing a high degree of moral turpitude or such wanton dishonesty as to imply a criminal indifference to civil obligations directed at the public generally." *Nicolosi v. BRG Sports, Inc*., 2019 U.S. Dist. LEXIS 143215, at \*17-18 (E.D.N.Y. Aug. 21, 2019) (Pollak, J.), *quoting Varveris v. Hermitage Ins. Co*., 806 N.Y.S.2d 688, 689 (2nd Dept. 2005). Plaintiff did not specifically seek punitive damages here, nor would punitive damages be available in a case such as this.

Reptile Theory argues for a damages award beyond compensation to an injured plaintiff and seeks damages aimed at protecting the community and "sending a message." This is, in essence, a request for punitive damages. If Plaintiff is permitted to use Reptile Theory arguments at trial, she would be inviting the jury to award punitive damages under another name. The Court should not allow this, and Plaintiff must be barred from making any such arguments at the time of trial.

**II. Reptile Theory Improperly Asks Jurors to Base Their Decision Considerations Other Than the Evidence**

Similarly, Plaintiff must be barred from making any Reptile Theory arguments because they ask the jury to consider the safety of the public and send a message to Defendant regarding its actions. As noted, Reptile Theory arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Defendant is not required to choose the course of action that in hindsight would have constituted the "safest product" or "best care", nor is Defendant required to be "near perfect" to Plaintiff. Plaintiff should not be allowed to ask jurors to consider the safety of the public, as

such an argument improperly encourages the jury to base its decision on factors other than the evidence.

### III. Reptile Theory Arguments Are Prejudicial

Even if Reptile Theory was relevant (which Defendant maintains it is not), reference to the theory should be precluded under F.R.E. 403, which provides:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.

Reptile Theory arguments do precisely that because they ask jurors how they would feel if placed in Plaintiff's position and invite jurors to find liability and award damages based on subjective feelings about personal or community safety. Such arguments would be unduly prejudicial to Defendant because it would improperly permit the jury to be influenced by emotion, self-interest, and sympathy, rather than deciding the case on the evidence.

### CONCLUSION

For the reasons set forth above, Defendant's Motion must be granted. Plaintiff must be barred from making Reptile Theory arguments at the time of trial.

**MOTION IN LIMINE TO PRECLUDE THE USE OF COMMITMENT QUESTIONS TO PROSPECTIVE JURORS**

This is a personal injury action in which the plaintiff alleges he sustained injuries as a result of Costco's negligence. Should the plaintiff persuade the jury that Costco is at fault for his injuries, the jury will be asked to award reasonable damages to compensate him for his loss, based on the evidence presented at trial. By this motion, Costco requests that the Court preclude the use of "commitment questions" during voir dire. Such advocacy-based jury voir dire questions wrongly ask jurors to commit to an outcome, including damages awards, and are improper because they ask the jury to decide the case based before having heard the evidence. As the Court explained in *United States v. Wilson,* 493 F. Supp. 2d 402, 405 (E.D.N.Y. Aug. 23, 2006) (Garaufis, J.), commitment questions " will not unearth such biases. Rather, they simply provide a starting point for an inquiry into the prospective juror's opinion on how he or she will treat mitigation or aggravation evidence presented at trial. These questions do not serve the goal of uncovering impermissible bias, but only beg follow-up questions that trend toward stake-out or pre-commitment questions. In other words, they seek to discover in advance what a prospective juror's decision will be under a certain state of the evidence." *Id.* (quotation omitted).

That is, the plaintiff is not permitted, in requesting the Court's inquiry of prospective jurors, to preview his claims to the jury during voir dire and ask prospective jurors whether they would commit to awarding a certain amount of damages based on counsel's representations. These tactics violate the purpose of voir dire to assess bias and prejudice, not to ascertain jurors 'opinions on the evidence before trial. Costco seeks to preclude such improper tactics at trial in this matter.

**I. Commitment Questions are not proper**

"Questions may be proper and indeed necessary if they deal with subject matter that would demonstrate impermissible bias on the part of a juror." *Wilson, supra a*t 404-05, *citing United*

16 of 31

*States v. Fell,* 372 F. Supp. 2d 766, 770 (D. Vt. 2005). "Of course, questions may be improper if they are case-specific and seek to discover in advance what a prospective juror's decision will be under a certain state of the evidence." *Id.* at 405; *see also United States v. Dervishaj*, 2015 U.S. Dist. LEXIS 78622, at *5 (E.D.N.Y. June 14, 2015); *United States v. Basciano*, 2011 U.S. Dist. LEXIS 11077, at *6 (E.D.N.Y. Feb. 4, 2011).

Rather than ascertaining juror bias, as voir dire is intended to do, commitment questions improperly ask jurors decide the outcome of the case, in the plaintiff's favor, with a certain verdict amount in mind, without hearing evidence presented at trial. For example, in *Wilson, supra,* the Court rejected open-ended questions that tended towards commitment questions in respect of the evidence.

Here, Costco requests that the court preclude the use of voir dire questions eliciting commitments from the jury during voir dire. The jury must decide this case on the evidence and should not be preconditioned to commit to a particular verdict based on counsel's characterization of the evidence during voir dire. This would violate the jury's duty to decide the case on the evidence, not counsel's argument and therefore must be prohibited at the trial of this action. "Stake-out questions are those that ask a juror to speculate or precommit to how that juror might vote based on any particular facts.  Clearly, such questions are improper." *Fell, supra* at 770. The Court should accordingly preclude the use of improper commitment questions in voir dire.

## CONCLUSION

For the reasons set forth above, Defendant's Motion must be granted.  Plaintiff must be precluded from asking "commitment questions" during voir dire during which counsel asks prospective jurors about their opinions of the evidence likely to be presented at trial.

### MOTION IN LIMINE TO PRECLUDE UNSUBSTANTIATED ANCHORING

This is a personal injury action in which the plaintiff alleges she sustained injuries as a result of Costco Wholesale Corporation's negligence. Should the plaintiff persuade the jury that Costco is at fault for her injuries, the jury will be asked to award reasonable damages to compensate her for her loss, based on the evidence presented at trial. Costco requests that the Court issue an order prohibiting plaintiff's counsel from unsubstantiated anchoring, which is a method by which a plaintiff suggests an unreasonably high damage award having "no rational connection to the facts of the case." *Gregory v. Chohan,* 670 S.W.3d 546, 557 (Tex. 2023).

### I. Unsubstantiated Anchoring Is an Improper, Yet Effective, Method of Suggesting to the Jury an Inflated and Irrational General Damages Award

Unsubstantiated anchoring is a "tactic whereby attorneys suggest damages amounts by reference to objects or values with no rational connection to the facts of the case." *Gregory,* 670 S.W.3d at 557. The strategy behind unsubstantiated anchoring is to "get jurors to think about the appropriate damages award on a magnitude similar to the numbers offered, despite the lack of any rational connection between reasonable compensation and the anchors suggested." *Id.* at 558. Here, plaintiff is seeking damages for pain and suffering, disability, and loss of normal life. The value on such an award is "inherently subjective." *Gen. Motors Corp. v. Burry,* 203 S.W.3d 514, 551 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g); *Hovsepyan v. GEICO Gen. Ins. Co.,* 616 F. Supp. 3d 1057, 1066 (E.D. Cal. 2022) (evaluating pain and suffering damages is "an inherently subjective process."); *Dwyer v. Deutsche Lufthansa*, 686 F. Supp. 2d 216, 221 (E.D.N.Y. 2010), *quoting Marcoux v. Farm Service and Supplies, Inc.,* 290 F. Supp. 2d 457, 478 (S.D.N.Y. 2003) ("assigning dollar amounts to pain and suffering is an inherently subjective determination."). This is where unsubstantiated anchoring comes in. It "creates an arbitrary, but

psychologically powerful, baseline for jurors who are struggling with providing a monetary value to pain and suffering." Behrens et al, *Summation Anchoring: Is it Time to Cast Away Inflated Requests for Noneconomic Damages?,* Amer.J. of Trial Advocacy, Vol 44: 321 at 322. Unsubstantiated anchoring tactics found improper include the following:

### A.  Tactic 1: Anchoring Via Reference to Irrelevant High-Cost Items

One strategy employed by plaintiffs 'attorneys is to inform the jury about the costs of high-value or rare items having no relation to the suit at hand and use that as a baseline for a damages award to the plaintiff. In *Gregory, supra,* plaintiff's counsel referenced in summation to the cost of a Boeing F-18 fighter jet ($71 million) and a painting by Mark Rothko ($186 million). *Gregory*, 670 S.W.3d at 557. Neither the fighter jet nor the Rothko painting had any relevance to the multi-vehicle auto accident at issue on trial, and on appeal, this anchoring technique was deemed improper. *Id.* at 558 ("the cost of a fighter jet, the auction price of a coveted painting, or any other expensive comparator are all equally flawed analogies … The self-evident purpose of these anchors, however, is to get jurors to think about the appropriate damages award on a magnitude similar to the numbers offered, despite the lack of any rational connection between reasonable compensation and the anchors suggested.").  In *Fasani v. Kowalksi,* 43 So.3d 805 (Fla. 3d DCA), counsel for the plaintiff analogized his client's injuries to an $80 million Picasso painting, posing in closing argument: "If that was a Picasso painting that was in the elevator and it got ripped, no one would argue with paying $80 million to replace it. Why is it any different when it's a man's brain?" *Id.* at 808. Reversing, the Court of Appeal held this " operated to deprive the [defendants] of a fair trial." *Fasani*, *supra*, at 811. Finally, in *Public Health Trust v. Geter*, 613 So. 2d 126, 127 (Fla. 3d DCA 1993), plaintiff's counsel urged the jury to "place a monetary value on the life of the plaintiff's decedent, just as a monetary value is placed on an eighteen-million-dollar Boeing 747 or an eight-million-dollar SCUD missile." On appeal, the Court ruled that this was "improper,

highly inflammatory, and deprived the defendant…of a fair trial." *Id.*

### B. Tactic 2: Anchoring Through Reference to Defendant's Wealth or Litigation Expenses

Another method is to prejudice the jury by referencing the opposing party's wealth or litigation expenses. In *Christopher v. DePuy Orthopaedics, Inc.* 888 F.3d 753 (5th Cir. 2018), plaintiff's counsel argued in closing arguments that the jury must "consider the damages by the day, by the hour by the minute." *Id.* at 787 n. 71. In rebuttal, plaintiff's counsel went on to argue, "[I]f they [the defendants] will pay their experts a thousand dollars an hour to come in here, when you do your math back there don't tell these plaintiffs that a day in their life is worth less than an hour's time of this fellow, or people they put on the stand." *Id*. These arguments were held improper because they misled the jury as to how it should determine pain and suffering damages; were unduly prejudicial and inflammatory; and utilized a benchmark having no rational relationship to the plaintiff's injuries. *Id.* Similarly, in *Gregory, supra*, plaintiff's counsel, in addition to referencing the cost of paintings and military aircraft, also "urged the jury to give defendants their 'two cents worth 'for every one of their 650 million miles that [defendant's] trucks drove during the year of the accident." *Gregory*, *supra*, at 558. The Texas Supreme Court found this improper as well: "The unmistakable purpose of this argument is to suggest that [defendant] can afford a large award and that it should be punished…But punitive damages are not at issue here; only compensatory damages are, and the 'two cents a mile 'argument has nothing to do with compensation." *Id.*

### C. Tactic 3: Anchoring Via the Improper Use of Mathematical Formulas Unsupported by Evidence

Counsel may also urge a jury to apply a mathematical formula to a damages award, for example, by suggesting that the jury award a certain dollar amount per day for pain and suffering damages. The attempt to apply such a formula has been rejected by the courts as well. As the

Illinois Supreme Court held in *Caley v. Manicke,* 24 Ill. 2d 390 (1962), "[p]ain and suffering have no commercial value to which a jury can refer in determining what monetary allowance should be given to a plaintiff for the pain and suffering he has experienced and is reasonably certain to experience in the future. This determination, like many others that a jury must make, is left to its conscience and judgment." To reduce the aggregate into hours and minutes, and then multiply by the number of time units involved produces an illusion of certainty, but it is only an illusion, for there is no more precision in the one case than in the other. *Id.* at 392-93.

### II. Unsubstantiated Anchoring is Improper Because Seeks Inflated Damages Based on Irrelevant Facts Not In Evidence and Inadmissible Hearsay

Anchoring is the process by which an attorney is "permitted to make reference, during closing statement, to a specific dollar amount that the attorney believes to be appropriate compensation for any element of damage that is sought to be recovered in the action." CPLR 4016(b). *But see Marshall v. Port Auth. of New York.*, No. 19-cv-2168 (LJL), 2022 U.S. Dist. LEXIS 219372, at *17 (S.D.N.Y. Dec. 5, 2022) (noting that CPLR 4016 "was controversial before it was adopted . . . and remains controversial today") (internal citations omitted). *Unreasonable* anchoring is the tactic whereby plaintiff's counsel *vouch* to the jury on summation for an astronomical figure for pain and suffering damages as constituting reasonable compensation, despite their knowledge that the amount is many times higher than the highest amount ever deemed "reasonable" by the Appellate Division under CPLR 5501(c). *See Marshall*, 2022 U.S. Dist. LEXIS 219372, at *17 (noting, in discussing CPLR 4016, that CPLR 5501(c) "may provide some protection against a runaway jury inflamed by counsel's request for an award bearing no relation to the evidence at trial"); *see also Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 126-39 (1996) (holding that CPLR 5501(c) is applicable to state claims in federal court); *Gonzalez v.*

*United States*, 80 F.4th 183, 187 (2d Cir. 2023) (clarifying that CPLR 5501(c) provides the appropriate standard for review of district court's damages award governed by New York law).

Further, under F.R.E. 401, only relevant evidence is admissible, and under F.R.E. 403, even relevant evidence will be excluded from trial "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Further, the jury's verdict must be based on the admissible evidence presented at trial. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (a verdict must be upheld if it is supported by "evidence adequate to support the jury's conclusion."). Thus, a jury is properly instructed that a damages award may not be based on speculation or conjecture, but rather, the evidence. *Mueller v. Hawaii,* 595 F. Supp. 3d 920, 930 (D. Hawai'I 2022). If the plaintiff's counsel plans to ask the jury to award a specific dollar amount, that amount must be based on the admitted evidence, and the jury must be instructed that statements by counsel are not themselves evidence or law. *See Reynolds v. American Airlines,* 2017 U.S. Dist. LEXIS 192822, *30-31 (E.D.N.Y. 2017).

In furtherance of this point, the Second Circuit disfavors anchoring altogether and has cautioned against the practice. *See Bermudez v. City of New York*, 2019 US Dist. LEXIS 3442, at *29 (E.D.N.Y. Jan. 8, 2019) (collecting cases). Such suggestions anchor the jurors 'expectations of a fair award at a place set by counsel, rather than by the evidence. *See Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel."). A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. "Specific proposals have a real potential to sway the jury unduly. While under the circumstances present here we do not yet reach the point

of holding that it is error to permit such recommendations, it is not a desirable practice. We encourage trial judges to bar such recommendations." *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vac'd on other grounds sub nom. Consorti v. Owens-Corning Fiberglass Corp*, 518 U.S. 1031 (1996).

Moreover, the introduction of unsubstantiated "anchoring" evidence violates the rule against hearsay under Rule 801(c) of the Federal Rules of Evidence. Here, even assuming such unsubstantiated anchoring evidence was relevant–and it is not–plaintiff has not identified any witnesses to testify as to the value of high-priced items. Thus, the only way she could introduce this evidence is through inadmissible hearsay that does not fall within any exceptions set forth in Rules 802 through 804. *See Harwood v. North Am. Bancard, LLC,* No. 18-cv-12567, 2022 U.S. Dist. LEXIS 118595, at *11 (E.D. Mich. July 6, 2022) (citations omitted) "(It is well established that, if offered for the truth of the matter asserted, news articles are inadmissible hearsay."); *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (same);  *Greene v. Scott,* 637 F. App'x 749, 751 (4th Cir. 2016) (same). That is, plaintiff's counsel does not have admissible evidence of the *actual* price of a jet fighter, contract for a free agent, or sale of a masterpiece.  Rather, counsel can only purport to know this information based on news accounts of these things which, of course, is inadmissible hearsay lacking proper factual foundation.

In sum, the price of irrelevant objects such as fighter jets, paintings, or a free agent contract have no relevance to whether the plaintiff was injured at Costco's premises, the extent of such injuries, and whether Costco bears any responsibility for them. Such evidence is therefore precluded under Rules 401 through 403. It is also precluded under Rule 802, as there is no witness with first-hand knowledge of such items that will testify at trial.

**III. Unsubstantiated Anchoring is Improper Because It Seeks an Award Based on Punishment Rather than Compensation**

While compensatory damages are intended to make a plaintiff whole, the purpose of punitive damages is to punish and deter. *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003). In a tort action specifically, the purpose of compensatory damages "is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred.'" *Gaines Towing & Transp. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir. 1999) (citation omitted). Unsubstantiated anchoring will produce a verdict that, rather than compensating the plaintiff for her injuries, improperly punishes Costco. This is especially so if plaintiff attempts to follow the "two cents a mile" example condemned by the Court in *Gregory.* As explained in that case, "[P]unitive damages are not at issue here; only compensatory damages are, and the 'two cents a mile 'argument has nothing to do with compensation." *Gregory, supra,* at 558. Here, Costco requests that the Court issue an order instructing plaintiff's counsel to refrain from seeking damages based on Costco's revenues, number of warehouses, number of items sold, or number of employees, employee compensation, or the costs of trial expenses, or any other similar irrelevant category relating to the extent of Costco's business or the extent of its funds. There is no claim for punitive damages here and thus, any such arguments are improper.

**IV. Unsubstantiated Anchoring Is Improper Because It Risks Violating the Rules of Professional Conduct**

Unsubstantiated anchoring violates ethical rules. Rule 3.4(d) of the Rules of Professional Conduct provides that a lawyer shall not "in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." Indeed, the Rules of Evidence forbid either party from introducing

24 of 31

irrelevant evidence. Permitting counsel for the plaintiff to discuss in closing arguments evidence that was neither admitted nor admissible would violate Rule 3.4.

Rule 3.7 likewise prohibits unsubstantiated anchoring. This rule provides that a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," absent certain exceptions. Counsel's summation is limited to the discussion of evidence that was introduced at trial. By suggesting for example, a per diem value on non-economic damages based on counsel's own assessment of the value of the case, a lawyer is improperly acting as both witness (testifying as to a value) and advocate (urging the jury to ascribe such value).

Attorneys who engage in unsubstantiated anchoring also violate Rule 3.3(a)(1), which prohibits an attorney from knowingly making false statements of law or fact. Suggesting a baseless and inflated number such as the cost of military aircraft or rare artworks violates this rule: "When an attorney suggests an amount that is well beyond any award sustained for a similarly situated individual with comparable injuries, or is certain, if awarded, to be reduced by the court, he or she may be stepping over the ethical line." Behrens, *supra,* at 333. As a result, courts properly forbid unsubstantiated anchoring because it suggests facts not in evidence. *See Mileski, supra* at 1172.

## CONCLUSION

For the reasons set forth above the motion in limine should be granted.

Respectfully submitted,
DEFENDANT,
Costco Wholesale Corporation
By their attorneys,

/s/ Benjamin Levites
Andrew R. Ferguson (AF5154)
Benjamin H. Levites (5557046)  Coughlin
Betke LLP
1330 Avenue of the Americas Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com
blevites@coughlinbetke.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to all counsel of record on Thursday, March 12, 2026.

*/s/ Benjamin Levites*
Benjamin Levites